IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK D. MARSHALL,

                        ORDER

              Plaintiff,

                        06-C-617-C

        v.

JANEL NICKEL; SEAN SALTER;
GREG GRAMS, Warden at CCI;
C/O JAMES; C/O T. BITTELMAN;
C/O NEUMAIER, Medical Doctor SULIENE;
ICE MARY LEISER; ICE BURT TAMMINGA;
RN. NANCY HAHNISCH; LT. LIPINSKI;
RN. SUE WARD; RN. LINDY MUCHOW;
2nd Shift SGT. FINK; RN. KIM CAMBELL;
MIKE VANDENBROOK; JANET WALSH; and
Psychiatrist DANA DIEDRICH,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In an opinion certain to surprise and disappoint prisoner litigants in Wisconsin,

Illinois and Indiana, the Court of Appeals for the Seventh Circuit has clarified how the 1996

Prison Litigation Reform Act is to be applied in cases raising unrelated claims against

different defendants.  In George v. Smith, --- F.3d ---, No. 07-1325 (7th Cir. Nov. 9, 2007)

(copy attached), the court ruled that a prisoner may not "dodge" the fee payment provisions

or the three strikes provisions in the PLRA by filing unrelated claims against different defendants in one lawsuit. Rather, district courts must sever unrelated claims against different defendants or sets of defendants and require plaintiffs to bring the claims in separate lawsuits. The court of appeals explained, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id. at 2. So, for example, if a prisoner's complaint raises a First Amendment claim against Defendant 1 for withholding religious materials, and an Eighth Amendment claim of excessive force against Defendant 2, the prisoner will not be permitted to proceed on both claims in a single suit. Instead, the complaint is to be rejected and the prisoner required to bring his claims in separate lawsuits, with each suit subject to the various provisions of the PLRA.

Unfortunately for plaintiff, his complaint in this case contains multiple claims against multiple defendants. Under George, I find that several of the claims against some of the parties do not belong in the same lawsuit. On January 30, 2007, I granted plaintiff leave to proceed on the following claims concerning incidents alleged to have occurred while plaintiff was housed at the Columbia Correctional Institution:

1) defendants Janet Walsh, the chief psychologist, Dana Diedrich, a psychiatrist, and Vandenbrook refused to treat plaintiff's mental health conditions;

2) defendant Suliene, a medical doctor, refused to treat plaintiff's hypertension and

2

kidney cysts, did not examine plaintiff before or after she discontinued his prescription for Lisinopril to determine whether he would suffer an increased risk of heart attack or stroke, refused to send him to see his nephrologist for assessment and treatment of his kidney problems and refused to examine or treat him for his keratoconus and hernia;

3) defendant nurses Sue Ward, Lindy Muchow and Campbell refused to monitor plaintiff's hypertension and altered plaintiff's medical records to show falsely that he refused treatment and received medical care;

4) defendant Sean Salter, a segregation captain, refused plaintiff out-of-cell exercise and defendants Burt Tamminga, an inmate complaint examiner, and Greg Grams, the warden, dismissed plaintiff's complaints about this restriction;

5) defendant Janel Nickel, the security director, put plaintiff on a "cold bag" meal restriction that was nutritionally inadequate and defendant Suliene refused to intervene or give plaintiff supplemental nutrition;

6) defendant Mark Vandenbrook, a psychologist, put plaintiff in clinical observation from January 13, 2006 until January 17, 2006, during which time plaintiff endured "frigid cold" temperatures and was denied clothing, hygiene items and a mattress;

7) defendant Vandenbrook allowed plaintiff to be held naked and in the cold on "full bed strap-down" for more than twelve hours on November 28, 2005 and defendant Nancy Hahnisch, a nurse, failed to intervene;

3

8) defendant Vandenbrook failed to give plaintiff a procedural due process hearing before or after he placed plaintiff in clinical observation in January 2006 or on full bed strap-down in November 2005;

9) defendant Salter permitted plaintiff to remain for two and a half months in a segregation unit where the stench of noxious odors was so strong that plaintiff suffered severe physical illness;

10) defendant James, a correctional officer, used excessive force against plaintiff on November 28, 2005 and defendant Lipinski, the "team supervisor," failed to intervene;

11) defendants Bittelman and Neumaier, correctional officers, used excessive force on plaintiff on June 7, 2006, and defendant Fink, a sergeant, failed to intervene; and

12) defendant Mary Leiser, an inmate complaint examiner, retaliated against plaintiff for preparing to file this lawsuit by threatening to have her husband "bust [plaintiff's] head."

Fed. R. Civ. P. 18(a) governs the number of *claims* a party may bring against another party. It provides that a party may raise "as many claims, legal, equitable, or maritime, as the party has against an opposing party." Therefore, for example, under Rule 18, plaintiff may sue defendant Suliene in one lawsuit to allege that she denied him medical care in several different ways and that she failed to see to it that plaintiff received nutritionally adequate meals when he was placed on bag lunches. Likewise, plaintiff may sue defendant Mark Vandenbrook in a single lawsuit on his claims that, on two separate occasions,

4

Vandenbrook ordered that plaintiff be placed naked in cells that were cold and did not have bedding and on one of these occasions had plaintiff strapped to a rubber mat, and that this defendant failed to give plaintiff a due process hearing either before or after placing him in observation or strap-down status.   However, Rule 18 does not allow plaintiff to bring his claims against defendant Suliene and his claims against defendant Vandenbrook in the same lawsuit.  Rather, Fed. R. Civ. P. 20(a) governs the number of *parties* a plaintiff may join in any one action.

Rule 20(a) provides that a plaintiff may sue more than one defendant when his injuries arise out of "the same transaction, occurrence, or series of transactions or occurrences" and when there is "any question of law or fact common to all defendants." Rules 18 and 20 operate independently.  7 Charles Alan Wright et al., Federal Practice & Procedure, § 1655 (3d ed. 1972).  Thus, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence or series of transactions or occurrences *and* presents questions of law or fact common to all.  Id.; 3A Moore's Federal Practice ¶ 20.06, at 2036-2045 (2d ed. 1978).  If the requirements for joinder of parties have been satisfied under Rule 20, only then may Rule 18 be used to allow the plaintiff to join as many other claims as the plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from

5

unrelated transactions. <u>Intercon Research Assn., Ltd. v. Dresser Ind., Inc.</u>, 696 F.2d 53, 57 (7th Cir. 1983) (quoting 7 Charles Alan Wright et al., <u>Federal Practice & Procedure</u>).

In this case, plaintiff is suing certain of Columbia Correctional Institution's psychologists and psychiatrists and doctors and nurses for failing to provide him with adequate medical and mental health care. Certainly, there is a common question of law relating to these claims. To succeed on each one, plaintiff will have to prove that the particular defendant acted with deliberate indifference to his serious medical or mental health care needs. Moreover, principles of fundamental fairness allow me to conclude that plaintiff's right to relief against each medical or mental health professional named as a defendant in this action arises out of the same occurrence or series of occurrences, that is, plaintiff's requests for treatment of established and ongoing physical and mental health problems. Therefore, I believe it is proper to allow plaintiff to proceed in one lawsuit, which I will call Lawsuit #1, on his claims that:

1) defendants Janet Walsh, the chief psychologist, Dana Diedrich, a psychiatrist, and Vandenbrook refused to treat plaintiff's mental health conditions;

2) defendant Suliene, a medical doctor, refused to treat plaintiff's hypertension and kidney cysts, did not examine plaintiff before or after she discontinued his prescription for Lisinopril to determine whether he would suffer an increased risk of heart attack or stroke, refused to send him to see his nephrologist for assessment and treatment of his kidney

6

problems and refused to examine or treat him for his keratoconus and hernia; and

3) defendant nurses Sue Ward, Lindy Muchow and Campbell refused to monitor plaintiff's hypertension and altered plaintiff's medical records to show falsely that he refused treatment and received medical care.

In addition, because plaintiff is proceeding against defendant Suliene on his claim that this defendant is denying him medical care that meets constitutional standards, plaintiff may utilize Fed. R. Civ. P. 18 to include in Lawsuit #1 his claim that Suliene refused to insure that plaintiff was receiving adequate nutrition when plaintiff was placed on bag lunch meals.  And, although I am not required to allow plaintiff to sue defendant Nickel in Lawsuit #1, I conclude that it is in the interests of efficiency and conservation of judicial resources to permit plaintiff to prove in a single lawsuit his claim that he was denied nutritionally adequate meals. Therefore, defendant Nickel will remain a part of Lawsuit #1.

Using this same method to analyze plaintiff's other claims, I conclude that the remainder of plaintiff's lawsuit must be severed into five additional separate lawsuits.  First, as noted above, plaintiff must raise in a separate lawsuit his claims that, on two separate occasions, defendant Mark Vandenbrook ordered that plaintiff be placed naked in cells that were cold and did not have bedding and on one of these occasions had plaintiff strapped to a rubber mat, and that this defendant failed to give plaintiff a due process hearing either before or after placing him in observation or strap-down status.  This would be Lawsuit #2.

7

Lawsuit #3 is limited to plaintiff's claims that defendants Salter, Tamminga and Grams refused plaintiff out-of-cell exercise.  Under Fed. R. Civ. P. 18, however, plaintiff may add to Lawsuit #3 his claim that defendant Salter subjected plaintiff to a stench of noxious odors so strong that plaintiff suffered physical illness.

In Lawsuit #4, plaintiff may sue defendants James and Lipinski for allegedly using excessive force against him on November 28, 2005.

In Lawsuit #5, plaintiff may sue defendants Bittelman, Neumaier and Fink for allegedly using excessive force against him on June 7, 2006.

Finally, in Lawsuit #6, plaintiff may sue defendant Mary Leiser for allegedly retaliating against plaintiff for exercising his right to file a lawsuit.

In light of <u>George</u>, plaintiff will owe a $350 filing fee for each of his now separate lawsuits, even though he presently has no means to pay an initial partial payment on any one of them.  If, however,  plaintiff does not want to incur the financial obligations for five additional cases or for other reasons does not wish to pursue one or more of the lawsuits as I have separated them, he may advise the court and defendants' counsel that he wishes to withdraw one or more of his lawsuits, identifying them by number as I have above, and I will allow the lawsuit to be withdrawn without prejudice to plaintiff's pursuing it at a later time. I understand that it is not normally the case that a lawsuit may be withdrawn without prejudice when a case has progressed as far as this one has.  However, in light of the

8

unanticipated and far-reaching effect of the <u>George</u> decision on existing prisoner litigation, I intend to permit prisoner litigants in cases pending in this court at the time the <u>George</u> opinion was issued to dismiss without prejudice claims that have been identified as requiring severance.  In this day and age of computerized resources, it should be relatively simple for defendants to store any documents they have created or obtained in the defense of the separate lawsuits that may be withdrawn in the event plaintiff chooses to file the lawsuits at a future time.

One other matter requires comment.  In an order dated October 2, 2007, I stayed all proceedings in this lawsuit and another of plaintiff's lawsuits, <u>Marshall v. Kingston</u>, 07-C-173-C, after concluding that plaintiff was not capable of representing himself in light of the complexity of his cases and plaintiff's mental shortcomings.  I advised plaintiff that I would attempt to find a lawyer who was willing to represent him.  More than six weeks have passed since the court has started its search and no lawyer has agreed to represent plaintiff.  It may well be that the daunting number of claims plaintiff raised in his complaints is contributing to the reluctance of any lawyer to accept an appointment to represent him.  Therefore, I will lift the stay in this case and in case no. 07-C-173-C for the purposes of allowing plaintiff to select which of his lawsuits he wishes to pursue and, after plaintiff has made his selection, allowing the court to reassess plaintiff's need for appointed counsel in each of the separate lawsuits that plaintiff chooses to pursue.

9

ORDER

IT IS ORDERED that

1.  Plaintiff may have until December 4, 2007, in which to advise the court and defendants on which one of the separately numbered lawsuits identified in the body of this opinion he wishes to proceed.  As to this one lawsuit, plaintiff's existing case number and fee obligation will be applied.

2.  Plaintiff may have until December 4, 2007, in which to advise the court which of the remaining separately numbered lawsuits he will prosecute, if any, and which he will withdraw voluntarily.

3.  For any lawsuit that plaintiff dismisses voluntarily (other than the one plaintiff chooses to keep assigned to this case number), he will not owe a filing fee.

4.  For any lawsuit plaintiff advises the court he intends to litigate (other than the one he chooses to keep assigned to this case number), plaintiff will owe a separate $350 filing fee. Because he did not have the means to pay an initial partial payment of the filing fee at the time he filed these lawsuits, he will not owe an initial partial payment at this time.  However, he must pay the fees in installments in accordance with 28 U.S.C. § 1915(b)(2) when the funds exist.

5.  If, by December 4, plaintiff fails to respond to this order, I will enter an order

dismissing the lawsuit as it presently exists with prejudice for plaintiff's failure to prosecute.

Entered this 26th day of November, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11