IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK D. MARSHALL,

                                                OPINION and ORDER

              Plaintiff,

                                                06-cv-617-bbc

     v.

DR. JANET WALSH, MIKE VANDENBROOK,
DANA DIEDRICH, DR. BRET REYNOLDS,
JANEL NICKEL, ROBERT HUMPHREYS,
MARC CLEMENTS, ANTHONY ASHWORTH,
and DAVID LIPINSKI,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     This is a civil action for monetary relief brought under 42 U.S.C. § 1983. Plaintiff Mark Marshall, a former Wisconsin state inmate, contends that defendants Janet Walsh, Mike VandenBrook, Dana Diedrich, Bret Reynolds, Janel Nickel, Robert Humphreys, Marc Clements, Anthony Ashworth and David Lipinski violated his Eighth Amendment rights by refusing to transfer him to the special management unit where he could receive adequate mental health care.

     Now before the court is defendants' motion for summary judgment asserting three grounds for entry of judgment: (1) defendants Walsh, VandenBrook, Diedrich and Reynolds

1

were not deliberately indifferent to plaintiff's mental health needs because the care they provided him was so inadequate that it poses a serious risk of harm to his mental or physical health; (2) defendants Nickel, Humphreys, Clements, Ashworth and Lipinski were not personally involved in providing mental health care to plaintiff or making decisions regarding plaintiff's mental health care; and (3) defendants are entitled to qualified immunity because no constitutional violation occurred or, in the alternative, no violation was clearly established at the time. Defendants' motion will be granted on the first ground, making it unnecessary to reach the other two.

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

### A. Parties

From July 12, 2005 until October 12, 2006, plaintiff Mark Marshall was incarcerated at the Columbia Correctional Institution in Portage, Wisconsin, from July 12, 2005 until October 12, 2006. Plaintiff has a long history of mental problems. He began taking medication for his mental illness at age 9 and was first hospitalized because of mental disorders at age 10. By the time plaintiff was 28, he had been hospitalized more than 30 times. Plaintiff now lives with his family in Springfield, Illinois.

2

At all times relevant to this case, defendants Janet Walsh, Mike VandenBrook, Dana Diedrich, Bret Reynolds, Janel Nickel, Robert Humphreys, Marc Clements, Anthony Ashworth and David Lipinski were employed at the Columbia Correctional Institution by the Wisconsin Department of Corrections. Defendant Walsh was the psychologist service unit supervisor. Defendant VandenBrook was a psychological associate. Defendant Diedrich was a medical consultant. Defendant Reynolds was a consultant psychiatrist. Defendant Nickel was the security director. Defendant Humphreys was the deputy warden until December 2005. Defendant Clements was the corrections security director until March 2006. Defendants Ashworth and Lipinski were supervising officers.

B. Plaintiff's Mental Health History

Before being transferred to the Columbia Correctional Institution, plaintiff was housed at Dodge Correctional Institution. The psychological staff at Dodge conducted a mental health screening of plaintiff. Staff classified plaintiff as having a mental health code of MH-2. Although the MH-2 classification has two components, 2A and 2B, plaintiff's file did not indicate which code applied to him. According to the mental health codes used by the Department of Corrections, inmates classified as MH-2A have serious mental illnesses based on Axis 1 conditions and inmates classified as MH-2B have serious mental illnesses based on Axis 2 conditions. Axis 1 conditions include schizophrenia, delusional disorder,

3

schizoaffective disorder and major depressive disorders. Axis II conditions include primary personality disorders that are severe, as well as psychosis, depression, or suicidality. Inmates classified as MH-2 are seen more frequently because they have more severe mental health issues than other inmates.

### C. Plaintiff's Stay at Columbia Correctional Institution

1. Segregation units at Columbia Correctional Institution

On July 12, 2005, plaintiff was transferred to Columbia Correctional Institution and placed in disciplinary segregation 1. The institution has three segregation units: disciplinary segregation 1, disciplinary segregation 2 and the special management unit. An inmate is placed in disciplinary segregation 1 when he is first put into segregation or when he is having behavioral problems. Disciplinary segregation 1 is the most restrictive segregation unit at Columbia. Disciplinary segregation 2 is a transition unit where additional security precautions are no longer necessary. The special management unit is designated to house mentally ill and vulnerable inmates. Each unit at Columbia is assigned a psychologist.

When an inmate is housed in disciplinary segregation 1, he can talk with psychologists at his cell front. Because of the types of inmates housed in disciplinary segregation 1, it can be loud and distracting in the unit. When it was loud, plaintiff had difficultly hearing defendants VandenBrook and Reynolds and the other doctors who

provided psychological services to him.

The special management unit provides an environment that tends to be therapeutic. It is peaceful and non-chaotic. The inmate's psychologist will make the initial decision to transfer the inmate from disciplinary segregation 1 to the special management unit. Even if an inmate has been placed on segregation, he can still be placed in the special management unit. Inmates are transferred from disciplinary segregation 1 to the special management unit so that they can be in a less restrictive setting.

2. Plaintiff's mental health treatment at Columbia Correctional Institution

Defendant VandenBrook was assigned to provide psychological services for inmates in disciplinary segregation 1. When VandenBrook reviewed plaintiff's mental health file, he learned that plaintiff was classified as MH-2 and that he had attempted suicide on prior occasions. At all times relevant to this case, defendant VandenBrook was supervised by defendant Walsh and discussed all transfers to the Wisconsin Resource Center and the special management unit with defendant Walsh. Both defendants had the authority to transfer plaintiff to the special management unit.

From July 13, 2005 to July 15, 2005, defendant VandenBrook placed plaintiff on clinical observation because he was at risk of self-harm. When plaintiff was placed on observation status, correctional staff would check on him every fifteen minutes to insure his

5

safety. In addition, a member of the psychological services unit would visit plaintiff at least once a day. Otherwise, plaintiff would receive clinical services once a week from the psychological services staff.

On July 14, 2005, defendant Walsh completed plaintiff's psychological services intake file review. Walsh noted that plaintiff was a moderate risk of suicide and should be scheduled for routine psychiatry checks and psychological follow-up.

On August 1, 2005, defendant VandenBrook placed plaintiff on observation because he was not coherent and appeared to be experiencing a psychotic episode. While plaintiff was on observation, defendant Reynolds evaluated him and noted that he was on medication, had multiple psychiatric hospitalizations and had multiple incidents of self-harm and threats of suicide. Defendant VandenBrook released plaintiff from observation on August 3, 2005.

On August 15, 2005, plaintiff requested a meeting with defendant Reynolds. Plaintiff told Reynolds that he needed medication for his anxiety, which he received. Reynolds also noted that plaintiff was refusing to take psychotropic medications that had been prescribed for him before his arrival at Columbia.

On September 5, 2005, plaintiff was placed on clinical observation because of bizarre and inappropriate behavior. Defendant VandenBrook released him from observation on September 7, 2005. Later that day, plaintiff was placed on observation again for overdosing,

6

hallucinating and cutting his arm. Because of the overdose, plaintiff was sent to the emergency room. The doctor who examined him recommended that plaintiff receive a psychological evaluation upon his return. On September 8, 2005, defendant VandenBrook met with plaintiff and found him to be at risk of further self-harm; therefore, plaintiff was kept on observation. Plaintiff was released on September 12, 2005 by VandenBrook, who by this time believed some of plaintiff's acts of self-harm were related to his mental illness.

On September 20, 2005, defendant Reynolds met with plaintiff as part of a routine follow-up. Reynolds was aware that plaintiff had attempted suicide on September 7, 2005. In his psychiatric report, Reynolds noted that:

> [plaintiff] related to me today that he is doing this in an attempt to make his health situation more tenuous. [Plaintiff] hopes that by not taking any blood pressure medicine, he will be at more risk as his condition worsens to the point that he would be medically injured in the future when he intends to cause the correctional officers to do a cell extraction or some other form of personal management or restraint. [Plaintiff] hopes that this will cause a great deal of upheaval in the correctional system and give him cause to sue or seek some means of redress. [Plaintiff] is very clear that he intends to refuse all his medication and he specifically asked for the anxiety medication to be discontinued. He states that currently he has no intent to harm himself outside of refusal to take medications. . .

Also, Reynolds found that plaintiff was refusing to take medication that had been prescribed for anxiety. (The parties dispute whether plaintiff's acts of self-harm were intentional or whether they were caused by his mental illness.)

From October 8, 2005 to October 13, 2005, Doctor Schwebke put plaintiff on

7

observation because plaintiff was cutting himself. Plaintiff was also placed in mechanical restraints. Plaintiff told Dr. Schwebke that he wanted to be housed in a different unit because he was not benefiting from psychological services in disciplinary segregation 1.

Plaintiff was placed on clinical observation on November 15, 2005, November 28, 2005 and December 22, 2005 because of acts of self-harm and threats of suicide. On January 13, 2006, plaintiff threatened to harm himself and kill staff members. Again, he was placed on observation. Defendant VandenBrook was concerned about plaintiff's continuing acts of self-harm and believed that plaintiff was not adjusting well to being at Columbia.

On two separate occasions, the doctors in the psychological services unit at Columbia referred plaintiff to the Wisconsin Resource Center but the references were denied. On December 14, 2005, Warden Grams informed plaintiff that the Wisconsin Resource Center rejected his referral "due to issues [plaintiff] present[s] regarding female staff in that setting." In May 26, 2006, plaintiff was informed that his referral was denied. (The parties have not presented any facts explaining why plaintiff was denied admittance in May 2006.)

Meanwhile, on March 2, 2006, defendants VandenBrook and Diedrich, a psychiatrist, met with plaintiff, at which time he showed normal psychomotor activity. On March 10, 2006, plaintiff reported hearing voices telling him to harm himself and that a demon bit him. He was placed on observation and visited by defendants Diedrich and VandenBrook, who assessed his mental status. Plaintiff admitted that he was having homicidal thoughts

8

generally, but stated that he was no longer having delusions or hallucinations and denied any plan to hurt himself. Plaintiff was concerned that his mental illness would relapse. On June 1, 2006, Diedrich and VandenBrook visited plaintiff again to assess his mental status. Plaintiff reported no homicidal or suicidal thoughts or any desire to harm himself.

Between March 10 and October 12, 2006, plaintiff was placed on clinical observation eight times: from March 10 to March 13, 2006; from March 18 to March 20, 2006; from March 30 to April 3, 2006; from April 28 to May 2, 2006; from May 2 to May 9, 2006; from July 11 to July 18, 2006; from August 23 to August 28, 2006; and from September 5 to 7, 2006. Plaintiff engaged in repeated acts of cutting himself, swallowed staples, formed a noose out of his bed sheets in an attempt to commit suicide and overdosed on his medication.

Defendant VandenBrook was aware that plaintiff's acts of self-harm were escalating and that plaintiff felt relief whenever he harmed himself but VandenBrook did not know whether plaintiff was consciously choosing to harm himself. Although he believed that plaintiff might benefit from psychotropic medication, he could not prescribe medication for plaintiff.

On October 11, 2006, defendant VandenBrook met with plaintiff to discuss his transfer to Waupun Correctional Institution. Plaintiff was transferred on October 12, 2006.

Between July 12, 2005 and October 12, 2006, 21 inmates were transferred from

9

disciplinary segregation 1 to the Wisconsin Resource Center and 74 inmates were transferred from disciplinary segregation 1 to the special management unit. Of the 74 inmates who were transferred from disciplinary segregation 1 to the special management unit, only 22 inmates remain housed at Columbia. Of these 22 inmates, 15 had a mental health code of MH-2.

### D. Non-Medical Defendants

Defendants Nickel, Humphreys, Clements, Ashworth and Lipinski had no personal knowledge of any decisions related to plaintiff's mental health needs and no personal involvement with the medical and psychological care given to plaintiff.

## OPINION

### A. Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its

favor. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

### B. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." Snipes v. DeTella, 95 F. 3d 586, 590 (7th Cir. 1996) (citing Estelle, 429 U.S. at 103).

To defeat defendants' motion for summary judgment, plaintiff must adduce evidence from which a reasonable jury could infer that he had a serious mental health need (objective component) and that defendants were deliberately indifferent to this need (subjective component). Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need may be serious if it is life-threatening, carries a risk of permanent serious impairment if left untreated, results in needless pain and suffering when treatment is withheld, Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997), "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, Cooper v.

11

Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). Mental illness can qualify as a serious medical need. Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001).

Defendants do not deny that plaintiff's mental illness is a serious medical health need. Therefore, I will assume that it is. Moreover, the undisputed facts show that defendants VandenBrook, Walsh, Diedrich and Reynolds were aware that plaintiff had been diagnosed with anti-social borderline personality disorder and schizoaffective disorder and that he was classified as MH-2. In addition, defendants knew that plaintiff engaged in repeated acts of harm to himself. At the least, therefore, defendants knew that plaintiff's mental health and his threats of self-harm required their attention.

As an initial matter, plaintiff appears to have abandoned his claim that defendants Nickel, Humphreys, Clements, Ashworth and Lipinski were deliberately indifferent to the substantial risk of serious harm caused by plaintiff's repeated acts of self-harm. In responding to defendants' proposed findings of fact, plaintiff does not dispute defendants' proposed findings that Nickel, Humphreys, Clements, Ashworth and Lipinski had no personal involvement in the medical and psychological care given to plaintiff. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th

12

Cir. 1995). Because these defendants were not personally involved in providing mental health care to plaintiff, summary judgment will be granted as to them.

To show deliberate indifference, a plaintiff must establish that the defendants were "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. Wynn v. Southward, 251 F.3d 588 (7th Cir. 2001). When a plaintiff receives some form of medical care, he can show deliberate indifference only if he can prove that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition. Snipes, 95 F. 3d at 592. Mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference. Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515 (7th Cir. 2002).

According to plaintiff, the failure of defendants Walsh, VandenBrook, Reynolds and Diedrich to transfer him from disciplinary segregation 1 to the special management unit constituted deliberate indifference to his mental health needs because it was an unreasonable response to his repeated acts of self-harm and attempts at suicide. Plaintiff argues that the transfer to special management unit was the "only adequate mental health care available" for his condition and placement in disciplinary segregation 1 "nullified any psychological

13

counseling that was attempted." Plt.'s Bf. at 10-11, dkt. #99.  Plaintiff's argument fails at the outset because he has failed to produce any evidence that the care he received was so inadequate that it posed a serious risk of harm to his mental or physical health.

The undisputed facts show that throughout plaintiff's stay at Columbia he was under the psychological care of defendant VandenBrook.  He received additional treatment from other clinicians in the psychological services unit including Dr. Schwebke and he received this treatment at least once a week.  In addition, plaintiff received psychiatric visits from both defendants Reynolds and Diedrich.  When plaintiff requested medication for anxiety, he was given it, although he often refused to take it or other psychotropic medications that had been prescribed to him before his arrival at Columbia.  There is no evidence that defendants ever denied plaintiff medication.  Instead, plaintiff chose to discontinue using both psychotropic and anxiety medication of his own accord.

On every occasion on which plaintiff threatened self-harm or harmed himself, he was placed in clinical observation, which was in the disciplinary segregation unit.  He has offered no evidence that defendants ever denied him care when he threatened or committed self-harm.  When he was placed on observation he was visited at least once a day by a psychological consultant to assess his mental health and his risk of self-harm. Between July 13, 2005 and October 12, 2006, he was placed in clinical observation on fifteen different occasions.  In addition, he was taken to the emergency room on September 7, 2005 when

14

he overdosed on his medication. Therefore, plaintiff cannot argue that defendants did not respond to his repeated acts of self-harm.

In addition, the doctors at Columbia attempted to transfer plaintiff to the Wisconsin Resource Center where he could receive additional mental health treatment. On both occasions the center declined the referral.

Plaintiff argues that defendants' behavior was unreasonable and inadequate because they could have transferred plaintiff to the special management unit at Columbia but chose not to do so. According to plaintiff, an inmate could not receive adequate mental health care in disciplinary segregation 1; therefore, the only reasonable alternative for an inmate with his condition was placement in the special management unit. Defendant Reynolds did acknowledge that disciplinary segregation 1 could be loud and unruly because of the inmates housed in the unit. However, plaintiff has offered no medical evidence that reinforces his claim that the mental health treatment he could and did receive in disciplinary segregation 1 was inadequate. The only evidence plaintiff has introduced about the quality of care is that when the unit was loud, he could not hear defendants when they offered him mental health treatment.

Further, plaintiff argues that because 15 of the 74 inmates who were transferred from disciplinary segregation 1 to the special management unit had a similar mental health classification to his, defendant's inaction constitutes deliberate indifference. This fact alone

15

would be insufficient to allow a jury to infer that the treatment plaintiff received was inadequate or that defendants' actions evidenced a disregard for a substantial risk to plaintiff's mental health. The mere fact that other inmates who were transferred to the special management unit had mental health classifications similar to plaintiff's does not mean that these inmates had the same mental health needs. The MH-2 classification is broad and includes diagnoses from schizophrenia to personality disorder to depression. The doctors at Columbia had the discretion and authority to transfer inmates on the basis of the mental health needs of each inmate. It is well established that medical professional are entitled to deference in their choice of treatment decisions unless the decision was a substantial departure from accepted practice, Sain v. Wood, 512 F. 3d 886, 894-95 (7th Cir. 2008); Collignon v. Milwaukee County, 163 F.3d 983, 988 (7th Cir. 1998), and it was "likely to seriously aggravate the prisoner's condition." Snipes, 95 F.3d at 592. Plaintiff offers no evidence that his particular mental health needs required transfer, that defendants' decision was a substantial departure from accepted practice or that defendants' actions seriously aggravated his mental health. Because a jury could not find that defendants were deliberately indifferent to plaintiff's mental health needs, the motion of defendants VandenBrook, Walsh, Reynolds or Diedrich for summary judgment will be granted.

ORDER

IT IS ORDERED that the motion for summary judgment of defendants Janet Walsh, Mike VandenBrook, Dana Diedrich, Bret Reynolds, Janel Nickel, Robert Humphreys, Marc Clements, Anthony Ashworth and David Lipinski is GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 18th day of November, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge